OLIVE DAVIS, *et al.*

*v.*

MORAY HYLTON

(No. 10298)

Submitted April 10, 1951.   Decided May 22, 1951.

Fox, JUDGE, dissenting.

*James S. Kahle, Clark M. Thornton,* for appellant.

*Sanders & Sanders, Hartley Sanders,* and *William Sanders,* for appellees.

HAYMOND, JUDGE:

This appeal presents the question of the validity of certain proceedings had in a suit to sell forfeited and delinquent lands for the benefit of the school fund, instituted in the Circuit Court of Mercer County, under Chapter 160, Acts of the Legislature, 1947, Regular Session, and of a deed dated October 1, 1948, made by the Deputy Commissioner of Forfeited and Delinquent Lands of Mercer County pursuant to a decree entered in such suit on September 24, 1948, to the defendant, Moray Hylton, for a parcel of improved land in Rock District of that county claimed and possessed by the plaintiffs, Olive Davis and Roy J. Davis.

The present suit in equity was instituted by the plaintiffs on February 1, 1949, in the Circuit Court of Mercer County, against the defendant, Moray Hylton, to cancel and annul the above mentioned deed, to set aside the forfeiture and the sale of the land conveyed, and to permit the land to be redeemed from sale for the nonpayment of certain delinquent taxes against it. The case was heard upon the bill of complaint and the amended and supplemental bill of complaint of the plaintiffs, the answers of the defendant, the general replications of the plaintiffs, the demurrer of the plaintiffs to the answer of the defendant to the amended and supplemental bill of complaint, and depositions filed in behalf of the respective parties. By final decree, entered January 9, 1950, the circuit court cancelled the deed of October 1, 1948, to the defendant for the land claimed and possessed by the plaintiffs, set aside the forfeiture and the sale of the land, permitted the plaintiffs to pay the defendant the amount of the purchase price paid by him for the land, with interest on that sum, and gave a recovery in favor of the plaintiffs against the defendant for costs. From that decree this Court granted this appeal and supersedeas on June 12, 1950, upon the petition of the defendant.

The material facts, as shown by the pleadings, the

exhibits filed with the bill of complaint, and the evidence, are not disputed.

By deed dated May 18, 1943, duly recorded in the office of the clerk of the County Court of Mercer County, on May 24, 1943, E. Cacy and Alice Cacy, his wife, and C. E. Hughes and Hattie A. Hughes, his wife, granted the real estate in question, Lot No. 14 of the Cacy and Hughes Addition to the Town of Matoaka, in Rock District, Mercer County, to the plaintiff, Olive Davis, in fee simple, but reserved the coal and the mineral rights.

After the purchase by the plaintiff, Olive Davis, of the property, which consisted of a lot of land improved with a residence, it was entered upon the land books of Mercer County for taxation in her name. It became delinquent for the nonpayment of taxes assessed against it for the year 1944, and on May 27, 1947, the plaintiff, Olive Davis, received through the mail a notice from the State Auditor which stated that the property could be redeemed from sale for the delinquent taxes by payment of the sum of $9.44 to the State Auditor before June 10, 1947. After the receipt of this notice the plaintiff, Olive Davis, purchased a postal note for $9.44 at the Post Office at Matoaka and mailed it to the State Auditor at Charleston on June 3, 1947, in an envelope so addressed but which did not bear any return address. At the time she purchased the postal note, payable to the State Auditor, she obtained a receipt for the note from the postmaster at Matoaka. The postal note was never returned to the plaintiff, Olive Davis, but it is clear that it was never received or used by the Auditor and that the delinquent taxes against the property for 1944 were never paid by the plaintiffs.

For some time after the plaintiff, Olive Davis, obtained title to the property, she rented it to other persons, but when she and her husband returned from an absence of about two years from this State, during which time they were in the State of Michigan, they entered into possession of the property on May 17, 1947. Since that time

they have occupied the residence on the land as their home and they were living there at the time of the institution of the suit to sell delinquent and forfeited lands in which the property was proceeded against and sold. The plaintiffs had resided in the neighborhood of Matoaka for approximately eighteen years before the institution of the present suit, and before they moved into the property purchased by the plaintiff, Olive Davis, they lived at nearby Weyanoke on property owned by the plaintiff, Roy J. Davis. He knew the sheriff of Mercer County and the sheriff knew him. The plaintiff, Roy J. Davis, was also well acquainted with the sheriff's deputy for Rock District during the years 1947 and 1948. The sheriff's deputy, who customarily served process in Rock District of Mercer County, however, did not know the plaintiff, Olive Davis, or that she was the wife of the plaintiff, Roy J. Davis.

After the plaintiff, Olive Davis, mailed the postal note to the State Auditor, on June 3, 1947, she did nothing to ascertain whether the note had been received and used by the Auditor. Both plaintiffs knew that the taxes were due and owing, but neither of them knew that a suit to sell the land had been instituted or that the property had been sold and a deed for it had been made to the purchaser, the defendant, Moray Hylton, until sometime in November, 1948, at which time the plaintiff, Olive Davis, learned of the sale and the deed in a conversation with a neighbor who asked her when she was going to move from the property. The plaintiff, Roy J. Davis, paid delinquent taxes on the property owned by him at Weyanoke and, though he gave his wife the money to pay the taxes on the property in which they were living, both plaintiffs knew that those taxes had not been paid.

On June 22, 1948, a suit in equity entitled State of West Virginia v. John H. Wimmer and others, was instituted in the Circuit Court of Mercer County, under Chapter 160, Acts of the Legislature, 1947, Regular Session, to sell forfeited and delinquent lands in that county pre-

viously forfeited to or purchased by the State for the nonpayment of taxes. The land in question was proceeded against in that suit and the plaintiff, Olive Davis, was named as a party defendant. Other named persons and all unknown parties and claimants having or claiming an interest in the lands proceeded against were made defendants in the suit. Process was issued and delivered to the sheriff of Mercer County for service. The summons for the plaintiff, Olive Davis, appears to have been given to one of the sheriff's deputies for service in Rock District, but she was not personally served and the return of the deputy as to her was that she was not found. Upon the return of process marked "not found", an order of publication was entered and duly published in two newspapers in Bluefield, Mercer County, against all defendants in the suit, including the plaintiff, Olive Davis, and the other named defendants who had not been personally served. Pursuant to a decree of sale entered August 9, 1948, the land proceeded against was advertised for sale and, on September 8, 1948, sold to the defendant, Moray Hylton, for the sum of $4.00. The sale was confirmed by decree entered September 24, 1948, and by deed dated October 1, 1948, the property was conveyed by the Deputy Commissioner of Forfeited and Delinquent Land to the defendant, Moray Hylton, who now claims it as its owner.

It is clear that the plaintiff, Olive Davis, a named defendant in the delinquent land suit, though a resident of Mercer County and in possession of the property proceeded against, was not personally served with process in that suit and that, though proceeded against by order of publication, she did not know that such suit was pending, that the land in question was included in the suit, that it had been sold, or that the sale had been confirmed and a deed made to the purchaser at the sale, until after the deed had been made and recorded and the time within which she could have redeemed the property in the suit had expired.

The decisive question in this suit is whether the former

owner of delinquent land, which has been sold to the State for the nonpayment of taxes and is irredeemable, who is a resident of the jurisdiction in which a suit to sell forfeited and delinquent lands under Chapter 160, Acts of the Legislature, 1947, Regular Session, is pending, and who is a named defendant in the suit in which the land of such former owner is involved, must be personally served with process or may be proceeded against by a regularly executed order of publication.

The regularity of the proceedings in the suit to sell forfeited and delinquent lands, including the execution of the order of publication, is not questioned in the instant suit, but their validity and their binding effect upon the rights of the plaintiffs in and to the land proceeded against are directly challenged and vigorously assailed. The plaintiffs assert, in effect, that the provision of Section 12, Article 4, Chapter 160, Acts of the Legislature, 1947, Regular Session, upon which act of the Legislature the delinquent land suit was based, that in such suit "The summons shall be served on the named defendants in the manner provided by law for the service of process in other chancery suits.", is mandatory; that it requires personal service of process on Olive Davis, the former owner of the land proceeded against, who, when the suit was commenced, resided within the jurisdiction of the court in which it was instituted and was also in possession of the land; and that the proceedings had in such suit, based upon an order of publication, which resulted in the sale and the conveyance of the land involved to the purchaser, the defendant, Moray Hylton, and that statute authorizing such proceedings, were violative of the due process of law provisions of the Constitution of the United States and of the Constitution of West Virginia and, for that reason, were null and void.

The circuit court, in cancelling the deed from the Deputy Commissioner of Forfeited and Delinquent Lands to the defendant, Moray Hylton, in setting aside the sale and the forfeiture of the property, and in permitting the plaintiffs to redeem the property by paying the purchase

price with interest to the defendant, Moray Hylton, based its decree upon statements in points 4 and 7 of the syllabus and statements of like import in the opinion in *State v. Gray,* 132 W. Va. 472, 52 S. E. 2d 759; and the plaintiffs cite and rely upon that case to support their contentions in this Court.

Substantially the same contentions as those now advanced by the plaintiffs were urged upon and rejected by this Court in the more recent case of *State of West Virginia, by J. Horner Davis v. Simmons,* 135 W. Va. 196, 64 S. E. 2d 503. In the *Simmons* case, point 4 of the syllabus in the *Gray* case, to the extent that it required personal service of process upon a former owner of forfeited or delinquent lands who is named as a defendant, and upon other named defendants, in a suit to sell such lands, instituted under Chapter 160, Acts of the Legislature, 1947; Regular Session, and point 7 of the syllabus in that case which required personal service of process, in such suit, upon all persons within the jurisdiction of the court in which such suit is instituted, when such service of process can be had, and statements of like import in the opinion of the court in the *Gray* case, were expressly disapproved.

The question for decision in this case was considered and determined, and the reasons for the conclusion reached were fully set forth and discussed, in the opinion in the *Simmons* case. To repeat the reasons stated, or to renew the discussion contained, in the opinion in that case is here unnecessary and would serve no useful purpose.

It is pertinent to observe, however, that in the *Simmons* case, in dealing with Section 12, Article 4, Chapter 160, Acts of the Legislature, 1947, Regular Session, in its entirety, and in giving effect to all the provisions of that section of the statute, including the provision that "The summons shall be served on the named defendants in the manner provided by law for the service of process

in other chancery suits.", and the final provision that "In view of the fact that the state has absolute title to all forfeited land, to all land sold to the state for non-payment of taxes and become irredeemable, to all escheated land, and to all waste and unappropriated land, and must under the constitution have such an absolute title before the land may be sold for the benefit of the school fund; and in view of the fact that the former owner of any such land, or any person claiming under him, has no further interest therein nor rights in respect thereto except such privilege of redemption as may be extended to him by the Legislature as an act of grace; and in view of the further fact that all parties known and unknown who may claim an interest in any of the land included in the suit are given notice thereof by the order of publication provided for above; therefore, the Legislature deems it both expedient and necessary to provide that failure to name any such person as a defendant, or failure to serve the summons on any named defendant, shall in no wise affect the validity of any of the proceedings in the suit for the sale of the state's title to such land.", this Court considered that section, as a whole, to mean that in a suit to which it applies, the former owner of the land involved, and any other persons having or claiming an interest in such land, may or may not be named in the summons; that if any such person shall be named as a defendant, he may or may not be personally served with process in the suit; that an order of publication, setting forth the requisite facts and information, shall be entered; and that the former owner, and all other interested persons, whether named or not named as defendants, may be validly proceeded against by such order of publication, even though such persons may reside within the jurisdiction of the court in which such suit is instituted. This Court also reached the conclusion that the section, as so interpreted and applied, is directory, not mandatory, in character.

With respect to the question involved in this suit, this Court held in point 1 of the syllabus in the *Simmons* case

that: "In a suit to sell forfeited and delinquent lands for the benefit of the school fund, instituted under the provisions of Chapter 160, Acts of the Legislature, 1947, Regular Session, the former owner of such lands, who is named as a defendant in such suit, whether a resident or a nonresident of this State, may be proceeded against by an order of publication; and such procedure is not violative of the due process or other provisions of the Constitution of the United States or of the Constitution of West Virginia."; and in point 3 of the syllabus in that case that: "The provisions of Section 12, Article 4, Chapter 160, Acts of the Legislature, 1947, Regular Session, relative to the award and the effect of an order of publication, are not violative of Section 1 of the Fourteenth Amendment to the Constitution of the United States or of Section 10, Article III of the Constitution of West Virginia."

The principles stated in the above quoted syllabus points in the *Simmons* case, which are now approved and adhered to, directly apply to and control the decision in the instant suit, and call for reversal of the final decree of the circuit court.

For the reasons stated, the final decree of the Circuit Court of Mercer County is reversed and set aside, and this cause is remanded to that court with directions to dismiss the bill of complaint and the amended and supplemental bill of complaint of the plaintiffs and to enter a decree for costs in favor of the defendant.

*Reversed and remanded with directions.*

Fox, PRESIDENT, dissenting:

For reasons stated in my dissenting opinion filed in *State of West Virginia by J. Horner Davis v. Simmons*, 135 W. Va. 196, 64 S. E. 2d 503, I dissent from the holding of the majority in this case, and would affirm the decree entered by the court below.